Good morning, Your Honors. Good morning. If you'll please the Court. Good morning, gentlemen. Counsel. Good morning. Can you hear me? Yeah. My name is Lana C.C. Glenn, and I am here representing Mr. Valdovinos-Medina, who, as you well know, has other aliases, including Mr. Georges and Ms. Bino. And what we are asking, what Mr. Medina is requesting, is that this Court Can I not hear you very well? I'm sorry. That this Court vacate the plea, the guilty plea to which Mr. Medina pled before the Honorable Judge Nielsen for the following reasons. Number one, Mr. Medina did not understand the rational and factual basis in entering the plea. Can I ask you a question? Counsel, were you the lawyer in the trial court? No, Your Honor. Mr. Nienhoff was trial counsel. Okay. Mr. Niel, he called the Court's attention, I believe, to Mr. Valdovinos' mental condition, and then sent Mr. Valdovinos, the defendant, was examined by a psychologist who filed, I believe, two letter reports. And now, did the Court ever make a finding about whether the defendant was mentally competent to stay in trial? Yes. Was there ever a hearing on that? No, there was not. And there should have been. But did the Court make a finding that he was competent to stay in trial? The Court made a finding that he was competent to enter his plea. Not that he's entered his plea, but that he was competent to go to trial. He said, we are finding you competent to go to trial. In other words, the way how this used to work is that the defense counsel will raise the issue of the defendant's competence to stay in trial, all right? And then the defendant examined by a psychiatrist or a psychologist. And I suppose that as well, the defendant can – the defense counsel can have the client examined by a different psychologist. And then you have a hearing. And then the judge makes a finding. Was that done here? Your Honor, that's a difficult question to answer because of the nature of the Court's comments. And I would refer you to Excerpt 47, which is referred in the opening brief on page 10. Well, let me just factually straighten this out from the standpoint that, I mean, he was examined by a psychologist because he made some erratic comments. And Mr. Nino never asked for a competency in hearing, but he related he was having some difficulties. Is that correct? Mr. Nino did request that he have his client examined. All right. But he didn't ask for any more than what happened. No. You know, his client was examined. And the Court – when a Court makes a finding that he was competent to enter the plea, a competency involves more than – you know, the competency is to participate in the proceedings. Now, whether a defendant enters a plea, whether he goes to trial, any number of things, that's up to the defendant. No one has control over that but the defendant. But the competency says you can participate in the proceedings, whatever follows. Am I not correct on that? You are correct on that. Okay. So, you know, I would – I agree with – you know, I see here that he's made some erratic statements, I would say. But it – is it your contention then that any defendant who makes erratic statements in court, even though a psychologist has determined that he is competent, which I believe would raise a reasonable doubt as to whether the defendant's mentally competent. So, I mean, we have all those facts there. So you're saying with those, it still raises a reasonable doubt as to that. I am saying – And his lawyer didn't ask for more. I am saying that there are still questions as to this gentleman's competency to have made the choice between entering the plea, which he did, and going to trial. And where the court even said to the defendant, you may not understand, but you're going to talk to your attorney and you are either going to enter the plea or we are going to trial. And that is where Mr. Valdovino stood. The concern of mine, and I would refer you to many of the remarks, it wasn't simply the remarks of Mr. Valdovino that inspired the court to order a competency exam. It was also the remarks of Mr. Medino himself, as well as the interpreter, indicating that he, too, was confused and had no clue exactly what was going on. The court went over and over, giving the defendant the opportunity to talk to his client, after which it was determined that he would go to trial or enter the plea. And the defendant, where you do have to judge in court his demeanor, the demeanor of the defendant in court was such that I think the – and would hope that you will find that the court erred in going forward and accepting his competency either to enter the plea or to go to trial. That there should have been a hearing. And I would also, Your Honor, kindly point out that in the letters that were sent to the court, and they're referred to – Well, what would have happened at the hearing? I mean, the thing is, a hearing can be a submission of what – the evidence that you have, that you just don't present more. I mean, you do have a psychologist looking at him, and the psychologist – I mean, Mr. Valdovino apparently does have – he suffers from antisocial personality disorder, but the doctor concludes that he had no mental disease or defect. His letter of 314.05, the psychologist's opinion was that Valdovino's had the capacity to understand the proceedings against him and to assist properly in the defense. That's the letter of 314.05 as well. That he fell into the normal to mild range on the psychologist's evaluation of his ability to consult with counsel, factual understanding of the courtroom proceedings, and rational understanding of the courtroom proceedings. So furthermore, the psychologist believed that Valdovino's had an acceptable understanding and appreciation of the charge against him, and he had an acceptable appreciation of the conditions and restrictions associated with different plea options. Your Honor, may I – may I make a suggestion? Included in what you are reading is a finding of mental retardation. Also included out of the Exhibit 14 is – Or does it say he's mentally retarded? It's Axis II diagnosis under antisocial personality. Where it says Axis II personality disorder, mental retardation. And then if you go one step further on the next page, paragraph 1234, the evaluation for competency to stand trial, there's a screening test. And the psychologist, Dr. Fredrickson, I think that's his name, excuse me if I mispronounce it, indicated, yes, Tim Fredrickson, that the ECST, which provides screening for feign incompetency, was not scored in this particular instance. And I don't know exactly how to argue it except to say that perhaps there should have been an independent evaluation. I think what Mr. Nino was assuming and I can only speculate, is that based on the conduct, on the demeanor, and on the interpreter, and just the whole aura in the courtroom, that the judge would in all likelihood say, I cannot accept this plea as knowing and voluntary. I do, in spite of the opinion of Dr. Fredrickson, I do not find you competent to enter this plea at this time, and I think that we should have a hearing and go forward from there. What would have happened if he'd been found incompetent? I'm sorry, Your Honor? What would have happened if he'd been found incompetent? Can you hear me? I'm having a hard time hearing you, and I know you're having difficulty with me. What did you ask me? No, I hear you perfectly. You've come through with great clarity. What would have happened if he had been found incompetent? Had he been found incompetent, I think they would have not accepted his plea. They may have had a follow-up evaluation. But can't you be locked up for a certain period of time? You know, the claims of competency, anyone that's got experience in the criminal courts will say, people are a lot more incompetent when they're faced with murder charges than when they're faced with lesser charges, because they can lock you up for a long time. I know that, Your Honor. And I think he was evaluated. He would have been locked up. Is there any contention that he's innocent of the crime? Not by him. No. Or by you? No. And he repeatedly, he repeatedly admits that he was in the United States without the permission to be here. What do we accomplish by sending him back? I think what we're accomplishing is a very, very good question. I think what we are accomplishing is to find out if Mr. Medina, if it were remanded by sending it back and they found, say they found him competent, they might remand for a different sentence and alter the offender score. I have absolutely no clue what the answer to your question is. Well, that's not the legal remedy to incompetence. That's like, that's a plea bargaining chip. That's not something we can worry about. That's right. And I'm conceding that. Okay. Do I have a minute and 28 seconds to reserve or am I over? You're in the red. I'm in the red. Thank you very much for your time. Okay. Thanks. Good morning. If it pleases the court, my name is Earl Hicks and I'm here on behalf of Pamela Byerly, who was counsel at, during these proceedings. I have gone over this record thoroughly and I've gone over the case law. And there was one question that was asked in regards to the statement made by Your Honor in regards to what the psychologist found. I wanted to note that this was also what was found by a treating psychiatrist. There's a paragraph at the very end of that page that says that this was concurred or corroborated by the treating psychiatrist also and the admitting psychiatrist. And looking at this. The only thing I'm really curious about is why the court didn't make a finding? Well, I went back over and the way I look at this from my experience is that this, first of all, was a preliminary. The defense counsel asked for Hick to be determined whether he was competent because he was having difficulty with him. The court didn't have what you would call a full-blown competency hearing. The court didn't bring in witnesses. It didn't have another court. You don't need that. All the judge has to do is say, okay, we've got this, these letters, and anything further, no. I find that he's mentally incompetent to stay in trial. I don't think I've ever seen one. I spent 12 years on the district court and this had come up. And as far as I know, including myself and others, we always come up with a finding. I mean, there was no protracted hearing. And it wasn't your responsibility to remind the judge, shouldn't we have a finding on this, Your Honor? I think that if I... It's part of your job. I understand that. What? I understand that. And you didn't follow through on it. I wasn't there. But the other attorney for the government did not say that. But let me... I thought you were the trial lawyer. No, I was not, is what I indicated. I'm here for Ms. Byerly, who was present. I was not counsel there. Oh, I thought you said you were. I'm sorry. I apologize, Your Honor. I was not there. Let me direct your attention, though, Your Honor, if I might, to the excerpt of record at page 32, because that's when... The information had not been turned over to the government at the point of the hearing. And so what the court said indicated that at the time... But the bottom-line conclusion and opinion, Ms. Byerly, for your information, is that the expert out there feels that the defendant is competent to stand trial and apparently was competent at the time of the alleged conduct. So I think we should discuss how the case should proceed from here. So I think that, in effect, not using the words finding, what the court is, in effect, saying here... Okay. That's all I wanted to know. Right. And so I think the court then proceeds and says, where are we going to go from here? Counsel at that point... Defense counsel does not pursue any further competency hearings. And what you have, if you look at the record, is you have a defendant who has some, what I consider, very legitimate concerns. Those legitimate concerns are... I've been through this once before, in effect. And this is... I'm talking about the defendant. I've been through this once before, and now I come back, and now the penalty is so much higher. Right. I got, what, four months the first time, and now you want to send me for a long time. Right. And you're treating me, in effect, like a terrorist. That, I believe, is what he's, in effect, saying. That you're treating me as if I'm really this terrible person. Secondly, and this is something that's fundamental, has been a fundamental argument that we get a lot of times during sentencing, why are you counting those prior convictions against me? And I know that I was convicted of this one, but I'm telling you, Judge, I'm not guilty. And what he's doing is having a conversation. If you look at the record, what appears is he's having a conversation with his counsel. His counsel's trying to explain to him that there are two sentences. That's how we refer to supervised release as a second sentence, and the first sentence being actually what's going on. Maybe the defendant doesn't understand that the actual. Well, and unfortunately, not unlike people that come before the court, he does have a mental diagnosis. He is not, you know, he does have whether, you know, whether it's mental retardation to whatever extent. I mean, he, you know, I don't think he's malingering here. I mean, he's a person of probably limited understanding. He has language issues, and plus a psychological component. So, and he does, some of the comments do seem to be somewhat erratic. And so, that's, you know, how much is too much, I guess. Well, the thing in talking about that there's cultural differences, does that make a person incompetent? I think that the court went to lengths at the hearing to discuss, at the, prior to the hearing to come forward. And I'm not indicating that this defendant is malingering, because he himself at one point says, oh, you sent me out to a mental asylum just because I'm thinking differently than you are, because I have a genuine difference as to what should be counted against me and how I should be treated on this case. And maybe you're not seeing me enough, you're not listening to what I'm telling you, and I want you to do certain things. Those are indications that the defendant is competent, and those would not raise a red flag to a judge that there's reasonable, a reasonable belief that this defendant is incompetent. In fact, it would raise something totally differently. The one unusual thing during the change of plea is where the defendant questions the issue, gets up and says, well, I made bail for that. But even then, based upon my experience, putting that in context, being in court in hundreds of changes of pleas over the 25 years that I've been here at the U.S. Attorney's Office, a lot of times defendants wait for an opportunity to say something because they feel it's relevant. One of the issues that was brought up in the plea agreement, one of the issues that Ms. Byerly expressed during the explanation of what happened is that he was at Otay Mesa is where he was deported from. Well, this defendant said, wait a minute. When he had the opportunities, I posted bail in Spokane. I went down to this particular location. They sent me, even though I posted bail, they sent me to Otay Mesa, and then they deported me. I consider that an attempt at an explanation, not necessarily something that's unusual, and that would, again, be a red flag for the judge, although the judge did react to it by saying, well, I don't understand why you're asking that. But when it came down, and I think some of the critical things that you look at, one of the things that the judge asked, has anybody made any promises to you, and what was his response at that point in time, after the court at an earlier hearing had discussed the problem with having to count his sentence, you know, his prior convictions, his response was, in effect, that my attorney promised that he would do his best to get me the best sentence he could. So, obviously, at that point in time, he understood that there were sentencing issues. He understood from a long time prior, he understood, it appeared, what the elements were for the purpose of conviction, because he was telling the court, hey, what is there for me to fight? I'm from Mexico. I'm not supposed to be here. So he clearly understands the element. I don't know if the court has any further questions. I don't. Thank you, Your Honor. Thank you. The matter stands submitted.
judges: Pregerson, Noonan, Callahan